## THE NATIONAL BUILDING SUPPLY CO. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Contract to Supply All That May be Required of an Article—Estimate of Quantity Not a Limitation.*

A city advertised for proposals for supplying to it all the cement that it might require for general purposes during a certain year, according to specifications which stated that the estimate of the quantity to be furnished was 5,000 barrels. This estimate was stated to be "only given as a guide to the bidder, but in no way to bind or limit the city as to the amount which is to be ordered." A's offer to supply the cement at a designated price was accepted, and a contract made for the purchase from him of all the cement the city might require in that year, according to the specifications. After furnishing 5,000 barrels A claimed that he was not obliged to furnish about 1,500 additional barrels called for by the city, the price of cement having advanced since the contract was made. *Held,* that A was bound under the contract to furnish all the cement in excess of the 5,000 barrels that might be required by the city for its general purposes, the contract having expressly provided that the right of the city to require delivery of cement at the agreed price was not limited by the estimate of 5,000 barrels as the amount that would probably be demanded.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Richard Bernard,* for the appellants.

The case at bar belongs to the class of which *Campbell* v. *Lambert,* 36 La. An. 35, is a striking example. There the plaintiff and defendant agreed that the party of the first part shall furnish and deliver to the party of the second part such quantities of Pittsburg coal as may be required by the party of the second part during the year beginning January 1st, 1879, to the extent of sixty thousand barrels, with the privilege of twenty thousand barrels more to be delivered with dispatch, *in such quantities and at such places within the city limits as may*

*be designated by the party of the second part.*   That the party of the first part shall receive for each and every barrel of Pittsburg coal delivered to the party of the second part, thirty-eight cents per barrel, payable at the end of each month.   During the first half of the year coal was low and the defendant could, with a profit, have delivered the whole 80,000 barrels, whereas he was required to deliver less than 1,500.   During the last half of the year coal advanced, and toward the end the plaintiff demanded the delivery of the whole 80,000 barrels, demanding 500 barrels per day.   The defendant refused, whereupon the plaintiff brought suit for the difference between the contract price and the price when defendant failed to deliver the remainder of the 80,000 barrels.   The Court say:   "We scan the provisions of the contract in vain to find the imposition on Campbell of any obligation to take or pay for any amount of coal whatever.   He undertakes nothing except to pay at the end of each month for such coal as he may have chosen to order.   And quoting from *Parsons on Contracts*, vol. 1, pp. 448–9.   "A promise is not a good consideration for a promise, unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement."

Of course, so far as an agreement has been executed or performed this rule does not apply.   See also to the same effect *Burnet* v. *Bisco*, 4 Johnson, 235; *The Houston and Texas Railway Company* v. *Mitchell*, 38 Texas, 85; *Chicago and Great Eastern Railway Company* v. *Dane*, 43 N.Y. 240; *Burton* v. *The Great Northern Railway Company*, 9 Exchecquer Rep. 507; *Thayer* v. *Burchard*, 99 Mass. 508.

The principles announced in *Parsons on Contracts*, and the *Louisiana case* are adopted in *Benjamin* v. *Bruce*, 87 Md. 255. See also *Wheeling Steel Co.* v. *Evans*, 97 Md. 313.

The undertaking on the part of the company was to furnish and deliver all that may be required.   The undertaking on the part of the city was to pay $1.53 per barrel, or 42 cents per bag, with a rebate of 10 cents for each empty bag or barrel returned for, *all furnished and accepted.*   It will be ob-

served that the contract does not even obligate the city to pay for all it may require; the city simply promises to pay for all the City Engineer may see fit to accept. If on July the first the city had ordered, and the company had accepted orders to the extent of, say 2,000 barrels, the company could say: "We decline to accept any further orders." And this is so because there was neither mutuality of agreement nor a meeting of the minds until the orders were given and accepted, designating the quantity, time, place, and mode of delivery.

*Albert C. Ritchie* (with whom was *W. Cabell Bruce* on the brief), for the appellee.

There are a number of cases which hold that under a contract to furnish all of a given material which may be required, the contractor is bound to furnish, and the contractee is bound to accept all of such material as is in good faith required for the purposes named in the contract, and that this obligation is in no way affected by the fact that the contract or the accompanying specifications contain an estimate of the amount of such material which may or will be required. *Harrington* v. *Mayor, etc., of the City of New York*, 10 Hun. 248, affirmed in 70 N. Y. 604; *Callmeyer* v. *Mayor, etc.*, 83 N. Y. 116.

In *Thurber* v. *Ryan*, 12 Kan. 453, the contract provided for the delivery of "600 cords, more or less, of good stone, sufficient for the erection and construction of a court house for the county of Greenwood." The Court held that "the amount was estimated at 600 cords, but it was to be the amount necessary to complete the building, whether more or less than 600 cords."

In *Wolf* v. *Wells, Fargo & Co.*, 115 Fed. Rep. 32, Wolf & Co. submitted the following offer to Wells, Fargo & Co. for cement for use in the Wells-Fargo Building: "We will name you a price for what you may require on about 5,000 barrels, more or less, of $2.56 per barrel, delivered at the building site, Second and Mission streets, in quantities to be designated by you." This offer was accepted. Subsequently Wells, Fargo & Co. notified Wolff & Co. that they would require an

amount of cement in excess of the 5,000 barrels, which additional cement Wolff & Co. refused to furnish. Wells, Fargo & Co. were thus compelled to go into the open market and purchase the amount required at an advanced price, and they brought suit to recover damages for the loss thus sustained by them. The Court said : ''The contract was not to deliver any particular quantity of cement, but to deliver such an amount as might be required by Wells, Fargo & Co. for use in its 'new building then in course of construction. The quantity designated 'about 5,000 barrels more or less' should be considered merely as an estimate of what the parties supposed might be required for use in the building.'' See also *Lobenstein* v. *United States,* 91 U. S. 329; *Brawley* v. *U. S.*, 96 U. S. 168.

In *Tancred Arnol & Co.* v. *The Steel Company of Scotland*, 15 App. Cas. 125 (L. R. 1890), the agreement obligated the contractor to supply ''the whole steel'' required for the Forth bridge, and one of the conditions of the contract provided that ''the estimated quantity of steel is understood to be 30,000 tons, more or less.'' The question presented was whether or not the contractor was entitled under the contract to supply all the steel actually used in the construction of the bridge. The Court held that the contractor was entitled under the contract to supply all the steel required, and that the mention of the estimated quantity did not control, cut down, or in any way affect the amount actually required.

It will be observed that in none of the contracts construed by the Courts in the above cases, was there a provision, as in the contract now before this Court, that the estimated quantities ''in no way bind or limit the city as to the amount which is to be ordered.'' The authorities cited all proceed upon the principle that an obligation to furnish *all* of a given material which may be required for a given purpose, is not affected by an estimate of the amonnt of such material which will be required. Where, as here, the contract goes further, and expressly provides in the specifications that the estimated quantity is in no way to bind or limit the city as to the amount which

is to be ordered, the obligation of the contractor to furnish *all* the material required is, we submit, beyond question.

BRISCOE, J., delivered the opinion of the Court.

The question presented for our determination in this case arises upon a demurrer to the plaintiff's declaration and involves the construction of a contract, made and entered into between the appellant and the appellee.

The appellant is a corporation, duly incorporated under the laws of the State, and is engaged in the business of furnishing building supplies and material in the city of Baltimore.

The appellee, the Mayor and City Council of Baltimore, in pursuance of the provisions of the 14th and 15th sections of the Baltimore City Charter on the 9th of January, 1902, advertised for proposals for furnishing cement required by the city for general purposes, during the year 1902.

On the 22nd of January, 1902, the appellant submitted a bid upon one of the printed proposal sheets, furnished by the city, agreeing to furnish cement for general purposes, for the year 1902, and in accordance with certain specifications at the following prices : Domestic Portland Cement (Brand) "Paragon" $1.53 per bbl.   The amount of rebate for each barrel returned 10c per bbl.   The amount of rebate for each bag returned 10c per bag.

The approximate estimate of quantities of Portland Cement to be furnished was stated on the bid to be 5,000 barrels.

And by section 7th of the specifications it was provided, that the approximate quantities are only given as a guide to the bidder but in no way to bind or limit the city as to the amount which is to be ordered.

The bid as thus submitted was accepted by the city, and on the 3rd of February, 1902, a bond and contract was entered into between the appellant and appellee.

By the terms of the contract the appellant agreed with the Mayor and City Council of Baltimore to furnish and deliver all the cement which may be required for general purposes in the City Engineer's Department for the year 1902, the mate-

rial and manner of delivery to conform strictly to the specifications on file in the City Engineer's office, and these specifications were made a part of the contract. And it was further agreed that for all the cement furnished and accepted by the City Engineer, the appellant company should receive the sum named in its bid.

It appears that in pursuance of this contract, proposal and specifications, the appellant furnished and delivered to the city five thousand barrels of cement under the contract, which was accepted and paid for by the appellee at the contract price, but cement having advanced in price, the appellant, on the 1st of November, 1902, refused to accept any further orders or to deliver any more cement under the contract. Subsequently, by an agreement between the parties, the appellant furnished and delivered to the city 1,483 additional barrels during the year 1902, at the contract price, without prejudice however to the rights of the parties to be thereafter determined.

And this suit is brought to recover the difference between the contract price and the market price of so much of the cement furnished the city by the appellant on and after the first of November, 1902.

The action of the Court in sustaining the demurrer presents the sole question for our consideration, and that is, was the appellant company under its contract bound to furnish and deliver all the Portland cement at the price named in the contract which was required for general purposes in the City Engineer's Department for the year 1902.

There can be but little doubt, we think, as to the answer to this question under a proper construction of the contract. According to its express terms and the bid submitted by the appellant company, it was to furnish and deliver to the city all of the Portland cement which would be required by it for general purposes in the City Engineer's Department during the year 1902, at the price named in the contract.

The vital and essential requirement of the contract was to furnish and deliver to the city all of the Portland cement which would be required for certain purposes during the year named and at the prices stated.

The statement upon the proposal sheet that the "Approximate estimate of quantities required was 5,000 barrels," could not, as urged by the appellant, control or change the amount to be furnished and delivered to the city, when by the 7th section of the specifications which is a part of the contract it was provided that the approximate quantities are only given as a guide to the bidder but in no way to bind or limit the city as to the amount which is to be ordered.

It seems to us then, without stopping to extend this opinion by citation of authorities or further quotation from the contract itself, that it was the plain meaning and intention of the parties, as stated by the contract, that the appellant was to furnish and deliver the cement to the city, as stated in the contract.

There is no intimation or contention that the city did not need or require the 1,483 barrels of cement, for the purpose stated in the contract, but the declaration avers that all of these barrels were in good faith required by the defendant for general purposes in the Engineer's Department during the year 1902.

The contract appears to be fair and reasonable in all its requirements and it is quite clear, that if the material contracted to be furnished, had fallen instead of advanced in price, the appellant company would have received the benefit of the price named in the contract.

There was no error then in the ruling on the demurrer, and for the reasons given the judgment will be affirmed with costs.

*Judgment affirmed with costs.*